Laura McG. Stackpole v. Commissioner.
Stackpole v. Commissioner
Docket No. 108852.
United States Tax Court
1944 Tax Ct. Memo LEXIS 386; 3 T.C.M. (CCH) 82; T.C.M. (RIA) 44026; January 28, 1944
*386 William J. Speers, Jr., Esq., for the petitioner. M. L. Sears, Esq., for the respondent. ARUNDELL
Memorandum Opinion ARUNDELL, Judge: The Commissioner determined a deficiency in income tax for the year 1934 in the sum of $10,142.24. A part of the deficiency has been conceded by the petitioner, and there remains the amount of $8,623.71 in controversy. The basis of respondent's determination denying a loss deduction based on the worthlessness of certain shares of bank stock is that the stock was acquired as part of an inseparable unit, and it is now impracticable to arrive at a proper allocation of cost as between the parts of the unit. The parties have agreed that the decision shall be in accordance with the result in the companion case, John Day Jackson, Docket No. 107990, this day decided. The stipulation reads as follows: [The Facts] It is hereby stipulated and agreed by and between the petitioner by her attorney and the respondent by his attorney that the following facts are true and that this stipulation may be received on the trial of this proceeding, subject to the right of either party to object to the admission in evidence of any statement herein contained on *387 the ground that the same is irrelevant or immaterial and subject also to the right of either party to introduce additional evidence not inconsistent herewith: 1. Reference is made to a stipulation filed in the case of John Day Jackson, petitioner, against Commissioner of Internal Revenue, respondent, Docket No. 107,990, in the Tax Court of the United States. It is stipulated and agreed that said stipulation shall be taken and received and shall be binding in this case in all respects as though filed herein, except only the portions thereof dealing with the acquisition by taxpayer of the stock of various corporations and the cost bases thereof. 2. On various dates between December, 1927 and July 29, 1929, the petitioner acquired by inheritance and by purchase sixty-eight (68) shares of the capital stock of Central Trust Company of Illinois, which shares carried with them beneficial rights in an equal number of shares of the stock of Central Illinois Company. The aggregate cost basis to petitioner of said sixty-eight (68) shares of stock of Central Trust Company of Illinois with the beneficial rights attaching thereto in stock of Central Illinois Company was $18,686.19. At all times *388 of acquisition of stock of Central Trust Company of Illinois by petitioner, it was impracticable to apportion the cost thereof to petitioner between the stock of Central Trust Company of Illinois and the beneficial interest in the stock of Central Illinois Company attaching thereto. 3. The petitioner continued to hold and own said sixty-eight (68) shares of stock of Central Trust Company of Illinois with accompanying beneficial rights in stock of Central Illinois Company until July 25, 1931. 4. On July 25, 1931, the petitioner, as the owner of sixty-eight (68) shares of the capital stock of Central Trust Company of Illinois with attaching beneficial interest in sixty-eight (68) shares of stock of Central Illinois Company, became entitled to surrender the same in exchange for forty-five and one-third (45 i/3) shares of Central Republic Bank & Trust Company with attaching beneficial rights in stock of Central Republic Company, and for sixty-eight (68) shares of the capital stock of Central Illinois Company. 5. On July 29, 1931, the petitioner purchased 4 2/3 shares of the capital stock of Central Republic Bank & Trust Company with attaching beneficial interest in a like number of *389 shares of Central Republic Company, at a cost of $140, per share. 6. On or about July 27, 1931, the petitioner surrendered her certificate for sixty-eight (68) shares of the capital stock of Central Trust Company of Illinois and shortly thereafter there was issued to petitioner in exchange therefor and for the purchase described in Paragraph 5 immediately above a certificate for sixty-eight (68) shares of the capital stock of Central Illinois Company and a certificate for fifty (50) shares of the capital stock of Central Republic Bank & Trust Company with attaching beneficial rights in a like number of shares of stock of Central Republic Company. 7. The petitioner has continued to own and to hold the aforesaid fifty (50) shares of the capital stock of Central Republic Bank & Trust Company (of which the name was subsequently changed to Central Republic Trust Company) until the present time. 8. The petitioner continued to own and to hold the aforementioned sixty-eight (68) shares of the capital stock of Central Illiois Company until December, 1942, in which month she sold said shares for an aggregate consideration of $3.12. 9. Upon the termination in December, 1933 of the trust *390 agreement of July 25, 1931, the petitioner received a certificate for fifty (50) shares of the capital stock of Central Republic Company, which thereafter were transferable and disposable entirely independently of and without reference to the stock of Central Republic Trust Company. Petitioner continued to hold these fifty (50) shares of Central Republic Company until December, 1942, in which month she sold the same for an aggregate consideration of $163.54. 10. The parties hereby stipulate and agree that, subject to such differences in figures as may be required by the variant facts with respect to acquisition of shares and cost bases, this case shall abide and be governed by the result in the aforementioned case of John Day Jackson, petitioner, v. Commissioner of Internal Revenue, respondent, Docket No. 1o7990. As of July 25, 1931 the value of the stock in the Central Affiliate was $51.10 per share; the value of the stock of the Consolidated Bank was $200 per share; and the value of the stock of the Consolidated Affiliate was $35.71 per share. An apportionment of the petitioner's cost of $18,686.19 among the three securities as of July 25, 1931 is practicable. It may be made *391 by allocating this cost among the three securities in the ratio which the total value of the petitioner's shares of each corporation bears to the aggregate value of the petitioner's shares in all three. In accordance with our opinion in the case of John Day Jackson, supra, the cost of the several shares of stock received by petitioner as a result of the reorganization of July 25, 1931 should be apportioned by attributing to the petitioner's stock in each corporation a percentage of the original cost, which percentage will be determined by dividing the aggregate value of all the shares received in the exchange by the value of the stock in each corporation. The cost of the four and two-thirds shares of stock of Consolidated Bank acquired in 1931 should be apportioned between the Bank and the Affiliate in the ratio which the value of the Consolidated Bank stock bears to the unit. The loss suffered by petitioner in 1934 by reason of her shares of stock in the Consolidated Bank becoming worthless should be allowed based on a cost determined in the manner herein set forth. Decision will be entered under Rule 50.